1
2
3
4
5
6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

7

8   WEI WANG,

9                          Petitioner,

10          v.

11   DONALD HOLBROOK,

12                          Respondent.

13

Case No. C21-1353-JHC-SKV

REPORT AND RECOMMENDATION

14          Petitioner Wei Wang, a state prisoner who is currently confined at the Washington State

15   Penitentiary in Walla Walla, Washington, seeks relief under 28 U.S.C. § 2254 from a 2019 state

16   court judgment and sentence for assault in the first degree – domestic violence.  Dkt. 30-1 at 2–9.

17   Respondent has filed an answer responding to Petitioner's habeas petition and has submitted

18   relevant portions of the state court record.  Dkts. 29, 30, 30-1.  Petitioner has filed a response to

19   Respondent's answer.  Dkt. 31.  The Court, having considered the parties' submissions, the

20   balance of the record, and the governing law, concludes that the petition should be denied and

21   this action dismissed with prejudice.

22          / / /

23          / / /

REPORT AND RECOMMENDATION - 1

## I.    FACTUAL BACKGROUND

The Washington Court of Appeals, on direct appeal, summarized the facts underlying

Petitioner's conviction as follows:

> In 2017, Wei Wang and Zhen Wang were a married couple living together in Shoreline.  They lived with one of Zhen's daughters from a previous marriage and their young son.  Zhen's parents, Xiamin Yu and Wenxiang Wang, also lived in Shoreline, in a condominium.  Zhen's mother, Yu, would often go to Wang and Zhen's house to care for the children.

> On several occasions, while the couple was arguing, Wang physically abused Zhen.  In June 2017, after Wang restrained and slapped Zhen, he threatened to kill Zhen and her family if she reported the incident.  Zhen sought medical treatment but did not report that Wang had hit her.  In August 2017, during another argument, Wang hit the back of Zhen's head while he restrained her on their bed.  After Wang released her, Zhen ran from the room and called the police.  Wang fled but was arrested upon his return to the house.

> After his arrest, a no-contact order prohibited Wang from having any contact with Zhen.  However, upon Zhen's request, Yu bailed Wang out of jail.  Despite the no-contact order, Wang returned to the home he shared with Zhen and slept in a spare room while she remained in the master bedroom.

> The night of September 13, 2017, Wang and Zhen argued and discussed divorce.  Yu was staying over to help Zhen with the children.  The next morning, Zhen woke up late and had to rush to take her daughter to school.  Realizing that she had forgotten her wallet, Zhen returned home immediately after dropping her daughter off.  She had been out of the home for approximately 15 minutes.

> When Zhen arrived home, the family's second car was missing.  Upon entering the house, she found blood and broken objects strewn throughout the living room, hall, and bathroom.  Zhen heard Yu calling for her and found her in a bedroom, lying on the floor in a pool of blood.  Yu's head was knocked in on the left side, she had a large laceration on her face, and several of her teeth had been knocked out.  Yu was largely unable to move or speak.

> Zhen telephoned 911 for help.  On the phone with the 911 dispatcher, Zhen repeatedly exclaimed that her mother's blood was everywhere and pleaded for help. Zhen told the 911 operator that she could see "through [Yu's] skull" and could see her mother's "brain stuff coming out."  The 911 operator instructed Zhen to use a towel to apply pressure to Yu's wound.  While Zhen was applying pressure to Yu's head wound, Yu communicated to her by moving a finger that Wang had caused her injuries.  Yu relayed this information by telling the operator, "[S]he said my husband come over here and kill her."  Zhen went on to provide Wang's name and

REPORT AND RECOMMENDATION - 2

the license plate of the missing family vehicle. She told a second operator that Wang had attacked Yu, repeating "I know it's him. It's him. He killed my mom. He killed my mom." Zhen told the operator she had a protection order against Wang. Zhen then asked the operator to protect her father at the condominium because Wang would "go over there and kill my dad." Zhen then pleaded for help until the paramedics arrived.

Yu suffered a fractured skull, brain contusions, head and facial fractures, lacerations to her scalp and face, and teeth avulsions. Yu's skull was eventually reconstructed with titanium mesh. Because of the brain damage she suffered, Yu has no memory of what occurred after Zhen left the house on September 14.

On September 15, Wang was apprehended in the family car in a motel parking lot in Beaverton, Oregon. Wang had lacerations on his torso, head, neck, hands, shin, and penis. He was charged with one count of first degree assault and one count of attempted first degree premeditated murder. For both counts, the State alleged that Wang was armed with a deadly weapon—a chair—and alleged a domestic violence relationship between Wang and the victim.

At trial, Wang testified as follows. On the morning of September 14, he tried to retrieve his cell phone and bank cards from the master bedroom but Yu blocked his passage and refused to let him enter. According to Wang, when he tried to push Yu out of the way, she grabbed and scratched him before grabbing and squeezing his penis. This caused Wang concern that Yu would seriously injure him. As a result, he picked up a wooden stool and hit her body and arm. Yu then released his penis from her grip but followed Wang to a bathroom, where she again grabbed and squeezed his penis. Yu then attempted to bite Wang's penis and he hit her in the mouth with a plastic step stool. Again, Yu let go of Wang's genitals and Wang exited the bathroom. However, Yu continued to follow Wang into a small bedroom where the two fought over a wooden stool, which caused the stool to break. Wang testified that the stool "might have hit her head" during the struggle. Eventually, Yu let go of the stool. Yu told Wang that Zhen would be back in a minute. Wang walked into the master bedroom and took his cell phone and bank card, as well as other items including Yu's cell phone, and Zhen's forgotten wallet, and left the house.

The trial court admitted evidence of Zhen's 911 call as consisting of present sense impressions or excited utterances. [court's footnote: Prior to trial, the trial court indicated that the statements were admissible under both the excited utterance and present sense impression exceptions to the hearsay rule. During trial, the trial court ruled that the entire call was admissible as consisting of excited utterances.] The trial court excluded evidence of the family's immigration status. [court's footnote: Wang, Zhen, and her parents are all originally from China. Zhen is a United States citizen.] The jury convicted Wang of assault in the first degree and found both the deadly weapon enhancement and the domestic violence relationship

1    by special verdicts.   The jury acquitted Wang of attempted murder in the first
2    degree.

3    Dkt. 30-1 at 11–14.

4    II.        PROCEDURAL BACKGROUND

5    Following his conviction for assault in the first degree, on September 16, 2019, Petitioner

6    was sentenced to 147 months imprisonment.  Dkt. 30-1 at 2, 5.  Petitioner appealed to the

7    Washington Court of Appeals, *see id.* at 27–69, and presented the following four issues to the

8    court for review:

9    1. A person's out-of-court statements are admissible under the hearsay
     exception for excited utterances only if the statements are made soon after a
10   startling event and the declarant had no opportunity to reflect and consciously
     fabricate a lie.   Out-of-court statements are admissible under the present sense
11   impression exception to the hearsay rule only if the statements are
     contemporaneous with the event described and are unembellished by
12   premeditation, reflection, or design.  Here, while speaking to a 911 operator, Zhen
     Wang consciously fabricated a lie.  Did the trial court abuse its discretion in
13   concluding the statements qualified as excited utterances and present sense
     impressions?

14   2. The constitutional right to present a complete defense includes the right
     to present evidence relevant to the defense.  Here, the trial court excluded evidence
15   of the family members' relative immigration statuses.   The evidence was highly
     probative because it illuminated the power dynamics within the family.  Did the
16   court err and violate Wang's constitutional right to present a defense when it
     excluded this evidence?

17   3. When the defendant presents evidence that he used force in self-defense,
18   the State must prove the absence of self-defense beyond a reasonable doubt.  Here,
     Wang testified he used force against his mother-in-law in self-defense when she
19   repeatedly grabbed and squeezed his genitals, causing him extreme pain.   After
     Wang's arrest, the police confirmed that his genitals were injured.  Wang did not
20   intend to injure his mother-in-law but struck her only in an attempt to break free
     from her grip on his genitals. Did the State fail to prove beyond a reasonable doubt
21   that Wang acted in self-defense?

22   4. A defendant's sentence may be enhanced if he was armed with a "deadly
     weapon" during the commission of the crime.  A deadly weapon is defined by
23   statute as an "implement or instrument which has the capacity to inflict death and
     from the manner in which it is used, is likely to produce or may easily and readily

REPORT AND RECOMMENDATION - 4

produce death." RCW 9.94A.825. The statute also provides a list of examples of *per se* deadly weapons. Id. Here, Wang's sentence was enhanced by 24 months based on his alleged use of a chair during the commission of the crime. But a plain reading of the statute does not include chairs, and the list of *per se* deadly weapons does not share similar characteristics to chairs. The legislature's intent to prevent armed crime is not served by enhancing Wang's sentence because he used a chair during the commission of the crime. Did the trial court err in adding a 24-month deadly weapon enhancement to Wang's sentence?

Dkt. 30-1 at 34–36.

The Washington Court of Appeals affirmed Petitioner's judgment and sentence. *See* Dkt. 30-1 at 11–25. Petitioner then sought review by the Washington Supreme Court. *Id.* at 115–55. Petitioner presented the following four issues to the Washington Supreme Court for review:

> 1. Washington cases hold that an out-of-court statement qualifies as an excited utterance only if it is made soon after a startling event and the declarant had no opportunity to reflect and consciously fabricate a lie. An out-of-court statement qualifies as a present sense impression only if it is contemporaneous with the event described and unembellished by premeditation, reflection, or design. Here, while speaking to 911, Zhen Wang consciously fabricated a lie. The trial court admitted the statement as both an excited utterance and a present sense impression. The Court of Appeals affirmed. Does the Court of Appeals' opinion conflict with cases from this Court and the Court of Appeals, warranting review? RAP 13.4(b)(1), (2), (4).

> 2. The constitutional right to present a full defense includes the right to present evidence relevant to the defense. Here, the trial court excluded evidence of the family members' relative immigration statuses. The evidence was highly probative of the defense because it illuminated the power dynamics within the family. The Court of Appeals affirmed the trial court's ruling, reasoning that exclusion of the evidence did not prevent Wang from arguing his theory of self-defense to the jury. Should this Court grant review and hold exclusion of the evidence violated Wang's constitutional right to present evidence relevant to his defense? RAP 13.4(b)(1), (2), (3), (4).

> 3. When the defendant presents evidence that he used force in self-defense, the State must prove the absence of self-defense beyond a reasonable doubt. Here, Wang testified he used force against his mother-in-law in self-defense when she repeatedly grabbed and squeezed his genitals, causing him extreme pain. After Wang's arrest, the police confirmed that his genitals were injured. Wang did not intend to injure his mother-in-law but struck her only in an attempt to break free from her grip on his genitals. Did the State fail to prove beyond a reasonable doubt that Wang acted in self-defense?

1

2          4. A deadly weapon is defined by the sentencing statute as an "implement
   or instrument which has the capacity to inflict death and from the manner in which
3  it is used, is likely to produce or may easily and readily produce death."  RCW
   9.94A.825.  The statute also provides a list of examples of *per se* deadly weapons.
4  Id.  Here, the court enhanced Wang's sentence by 24 months based on the allegation
   he used a chair during commission of the crime.  But a plain reading of the statute
5  does not include chairs, and the list of *per se* deadly weapons does not share similar
   characteristics to chairs.  Is the question of whether a chair can qualify as a "deadly
6  weapon" under the statute an issue of substantial public interest warranting review?
   RAP 13.4(b)(4).

7  Dkt. 30-1 at 119–21.

8          Petitioner presented the first and fourth issues to the Washington Supreme Court as errors

9  of state law.  Dkt. 30-1 at 126–30, 135–38.  The second and third issues, however, Petitioner

10 presented as federal constitutional claims.  *Id.* at 130–35.

11         The Washington Supreme Court denied review on June 7, 2021.  Dkt. 30-1 at 157.

12 Subsequently, on June 16, 2021, the Washington Court of Appeals issued the mandate.  *Id.* at

13 159.

14         On October 4, 2021, Petitioner filed a § 2254 habeas corpus petition in this Court seeking

15 to challenge his 2019 conviction and sentence.  *See* Dkt. 1.  Because Petitioner's petition raised

16 four grounds for relief and Petitioner indicated he had exhausted only one of them, *id.* at 12, the

17 Court determined it was a mixed petition, *see* Dkt. 4.  As a result, the Court ordered Petitioner to

18 show cause why three of his claims should not be considered unexhausted or, alternatively, to

19 advise it whether he wished the Court to: (1) dismiss the mixed petition without prejudice; (2)

20 stay the mixed petition; or (3) delete the unexhausted claims and proceed with the exhausted

21 claims only.  *Id.* at 6.  On November 16, 2021, Petitioner filed a response to the Court's Order to

22 Show Cause, Dkt. 5, which failed to demonstrate that Petitioner had exhausted the three claims

23 in question.  Subsequently, on November 19, 2021, Petitioner filed a motion to amend or stay the

   mixed petition, Dkt. 6, asking the Court to stay proceedings in this Court pending his complete

1   exhaustion of all of his claims.  Thereafter, on December 9, 2021, the Court granted Petitioner's

2   request to stay this action pending completion of Petitioner's forthcoming state court personal

3   restraint petition seeking to exhaust his unexhausted claims.  Dkt. 9.

4       On December 15, 2021, Petitioner filed a motion to vacate his judgment and sentence in

5   the superior court.  Dkt. 30-1 at 161–67.  *See also id.* at 169–77.  On May 11, 2022, the superior

6   court transferred the motion to the Washington Court of Appeals for consideration as a personal

7   restraint petition.  *Id.* at 179–81.  Petitioner raised the following issues in the personal restraint

8   petition: (1) the state failed to prove first degree assault and failed to disprove that Petitioner was

9   acting in self-defense; (2) the trial court abused its discretion in admitting Zhen's statements to

10  the 911 operator because they did not qualify as an excited utterance or a present sense

11  impression; (3) the court erred and violated Petitioner's constitutional right to present a defense

12  when it excluded evidence of the relative immigration statuses of the family members; and (4)

13  Petitioner's sentence was improperly enhanced using the deadly weapon enhancement.  *Id.* at

14  161–67.  Petitioner also raised ineffective assistance of trial and appellate counsel claims.  *Id.* at

15  166.

16      The Washington Court of Appeals dismissed the personal restraint petition on August 15,

17  2022.  Dkt. 30-1 at 183–86.

18      Subsequently, on August 31, 2022, Petitioner sought review by the Washington Supreme

19  Court, Dkt. 30-1 at 188–93, and presented the following issues: (1) Petitioner's wife, Zhen, lied

20  to the police and 911 operator; (2) the trial judge erred by excluding evidence of the family

21  members' immigration statuses; (3) Petitioner did not understand the law regarding protective

22  orders; and (4) Petitioner's trial lawyer did not put proper evidence before the jury.  *Id.* at 188–

23  90.  On October 17, 2022, the Commissioner of the Washington Supreme Court denied review

on the ground that Petitioner did not provide any authority or reference to the record to support

his request for discretionary review. *Id.* at 195–96.

On January 13, 2023, Petitioner moved to modify the Commissioner's ruling.[1]  Dkt. 30-1

at 198–205.  Petitioner also filed a "Motion to Claim Federal Constitutional Issues."  *Id.* at 207–

11.  In that motion, Petitioner attempted to raise as federal claims the four claims now asserted in

this habeas action.  *Compare id.* at 207–08 *with* Dkt. 28 at 5–10.

On March 10, 2023, the Washington Supreme Court denied both motions.  Dkt. 30-1 at

213.  The Washington Court of Appeals issued a certificate of finality indicating that its August

15, 2022, decision became final on January 17, 2023.  *Id.* at 215.

Thereafter, on March 15, 2023, Petitioner filed a motion informing this Court that

proceedings in the state court had concluded.  Dkt. 21.  Accordingly, on March 29, 2023, the

Court entered an order lifting the stay and serving Respondent.  Dkt. 22.  On April 11, 2023,

Petitioner filed an amended petition in this Court.  Dkt. 28.  Respondent now asks the Court to

dismiss the amended petition.  Dkt. 29.

### III.    GROUNDS FOR RELIEF

Petitioner identifies the following grounds for federal habeas relief in his amended

petition:[2]

1.    The state courts believed all the lies of Zhen's reports and statements, also Yu

testified to lie to deny herself audio-interview-recorder.

---

[1] Petitioner's motion was filed as a "Motion to Show More Cause for Discretionary Review," but was treated as a motion to modify.  *See* Dkt. 30-1 at 198.

[2] The Court reproduces the grounds for relief exactly as Petitioner has written them in the amended petition.

2.      The state courts denied my immigration background which can reveal not only Zhen controled and set me but also Yu ordered me doing what Yu liked.  Yu forced me open all my financial to Yu.

3.      The state courts exculpated the evidence of Yu mentioned sex to me on several occasions.  Yu tried adultery to me but never got which can prove the reason Yu focused on my genitals.

4.      The expert witness of trial court, Mike, made many low mistakes to guess image and enlarge my case.  The prosecutors guided jury to believe their error.

Dkt. 28 at 5–10.

## IV.      DISCUSSION

In seeking dismissal of the amended petition, Respondent argues that Petitioner's first and fourth claims are not properly before this Court because Petitioner failed to exhaust them in state court. Dkt. 29 at 6, 8–10.  Respondent further argues that because both claims are now time barred, the Court is procedurally barred from considering them. *Id.* at 11–12.  Respondent concedes that Petitioner's second and third claims were properly exhausted and are therefore eligible for review. *Id.* at 6.  However, Respondent argues that Petitioner is not entitled to relief with respect to either claim. *Id.* at 17–22.

The Court begins by addressing Respondent's argument that Petitioner's first and fourth claims are procedurally barred because they were not properly exhausted in state court and are now time barred.

### A.      Exhaustion and Procedural Default

A state prisoner is required to exhaust all available state court remedies before seeking a federal writ of habeas corpus.  28 U.S.C. § 2254(b)(1).  The exhaustion requirement is a matter

1  of comity, intended to "give the State an initial opportunity to pass upon and correct alleged

2  violations of its prisoners' federal rights."  *Picard v. Connor*, 404 U.S. 270, 275 (1971) (internal

3  quotation marks and citations omitted).  In order to provide the state courts with the requisite

4  "opportunity" to consider a prisoner's federal claims, the prisoner must "fairly present" his

5  claims to each appropriate state court for review, including a state supreme court with powers of

6  discretionary review.  *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing *Duncan v. Henry*, 513

7  U.S. 364, 365–66 (1995), and *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999)).

8       "In order to 'fairly present' an issue to a state court, a petitioner must 'present the

9  substance of his claim to the state courts, including a reference to a federal constitutional

10  guarantee and a statement of facts that entitle the petitioner to relief.'"  *Gulbrandson v. Ryan*,

11  738 F.3d 976, 992 (9th Cir. 2013) (quoting *Scott v. Schriro*, 567 F.3d 573, 582 (9th Cir. 2009)).

12  *See also Picard*, 404 U.S. at 275–78 (proper exhaustion requires a petitioner to have "fairly

13  presented" to the state courts the exact federal claim he raises on habeas by describing the

14  operative facts and federal legal theory on which the claim is based).  It is not enough that all of

15  the facts necessary to support a prisoner's federal claim were before the state courts or that a

16  somewhat similar state law claim was made.  *Anderson v. Harless*, 459 U.S. 4, 6 (1982).  "If a

17  petitioner fails to alert the state court to the fact that he is raising a federal constitutional claim,

18  his federal claim is unexhausted regardless of its similarity to the issues raised in state court."

19  *Johnson v. Zenon*, 88 F.3d 828, 830 (9th Cir. 1996).  Claims that are based on the same facts

20  must be separately exhausted if they are supported by distinct constitutional theories.  *See Gray*

21  *v. Netherland*, 518 U.S. 152, 162–63 (1996).

22       Moreover, in order for a federal habeas claim to be deemed exhausted, a petitioner must

23  properly raise it at every level of state court review.  *See Casey v. Moore*, 386 F.3d 896, 916 (9th

Cir. 2004); *Ortberg v. Moody*, 961 F.2d 135, 138 (9th Cir. 1992).  *See also O'Sullivan*, 526 U.S. at 845 ("[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.").  This means that a claim remains unexhausted when it is raised for the first time on discretionary review to the state's highest court and denied without comment.  *Casey*, 386 F.3d at 916 (citing *Castille v. Peoples*, 489 U.S. 346, 351 (1989)).  "[W]here the claim has been presented for the first and only time in a procedural context in which its merits will not be considered unless there are special and important reasons therefor," the exhaustion requirement is not satisfied.  *Castille*, 489 U.S. at 351 (internal quotation marks and citation omitted).

A prisoner procedurally defaults on a federal habeas claim when he fails to exhaust his state court remedies with respect to the claim and the court to which the prisoner would be required to present his claim in order to satisfy the exhaustion requirement would now find the claim to be procedurally barred.  *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991).  When a prisoner defaults on his federal claims in state court, federal habeas review of the claims is barred unless the prisoner can demonstrate "cause" for the default and "actual prejudice" as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice because he is actually innocent.  *Id.* at 750; *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

### 1. *Petitioner's Failure to Exhaust*

Respondent argues that Petitioner failed to exhaust his first and fourth claims because he did not fairly present them in state court as federal constitutional claims.  Dkt. 29 at 8–10.  The Court agrees.

1    In his first claim, Petitioner alleges Zhen and Yu lied and testified falsely in violation of

2  Petitioner's constitutional rights. Dkt. 28 at 5.  On direct appeal, Petitioner alleged that Zhen

3  "blatantly lied" in her statements to the 911 operator.  Dkt. 30-1 at 46, 126.  In the personal

4  restraint petition proceedings, Petitioner again alleged Zhen's 911 statements were lies.  *Id.* at

5  162–63, 188–89.  However, in both cases, Petitioner challenged the statements as inadmissible

6  hearsay under state law.  *Id.* at 46–53, 126–30, 162–63, 188–89.  Petitioner did not contend the

7  false statements violated his federal constitutional rights until after the Washington Supreme

8  Court had already denied review, when he filed the "Motion to Claim Federal Constitutional

9  Issues."[3]  *Id.* at 207–11.

10    Similarly, Petitioner's fourth claim challenges the truthfulness of the testimony of an

11  expert witness and alleges the prosecutor guided the jury to believe the witness's errors.  Dkt. 28

12  at 10.  However, Petitioner does not appear to have raised this claim in the Washington Court of

13  Appeals on direct appeal or collateral review, nor did Petitioner raise this claim before the

14  Washington Supreme Court in his petition for review or motion for discretionary review.  *See*

15  Dkt. 30-1 at 27–67, 115–38, 161–67, 188–90.  Instead, Petitioner raised the claim for the first

16  time in the state courts when he filed his motion to modify the Commissioner's ruling denying

17  discretionary review, *id*. at 201–02, but did not allege the expert witness's testimony violated his

18  federal constitutional rights until he filed the "Motion to Claim Federal Constitutional Issues."[4]

19  *Id.* at 207.

20

21    [3] The Washington Supreme Court denied that motion without comment.  Dkt. 30-1 at 213.

22    [4] In the motion to modify, Petitioner contends this same witness, who was also the "chief
    detective" in Petitioner's case, interviewed Petitioner without "clearly declar[ing]" Petitioner's
    constitutional rights.  Dkt. 30-1 at 201.  However, Petitioner does not raise this issue in this Court as a
23  claim supporting federal habeas relief, and even if he did, the claim would be unexhausted, as Petitioner
    presented it to the state courts for the first time after the Washington Supreme Court had already denied
    review.

1   Thus, because Petitioner did not identify either claim as a federal constitutional claim

2   until after the Washington Supreme Court had already denied review, Petitioner did not fairly

3   present the claims in state court.  *Castille*, 489 U.S. at 351; *Casey*, 386 F.3d at 916.  Given this,

4   Petitioner's first and fourth claims have not been properly exhausted, and Washington law now

5   bars review of the merits of both claims absent a showing of cause and prejudice or actual

6   innocence.[5]

7                  2.      *Cause and Prejudice*

8       As indicated, when a state prisoner defaults on his federal claims in state court, federal

9   habeas review of the claims is barred unless the prisoner can demonstrate "cause" and

10  "prejudice," or demonstrate that failure to consider the claims will result in a fundamental

11  miscarriage of justice because he is actually innocent.  *Coleman*, 501 U.S. at 750; *Murray*, 477

12  U.S. at 496.  To satisfy the "cause" prong of this standard, a petitioner must show that some

13  objective factor external to the defense prevented him from complying with the state's

14  procedural rule.  *Coleman*, 501 U.S. at 753 (citing *Murray*, 477 U.S. at 488).  "Cause" is not

15  demonstrated if the default is fairly attributable to the petitioner's own conduct.  *McCoy v.*

16  *Newsom*, 953 F.2d 1252, 1258 (11th Cir. 1992).  "The fact that [a petitioner] did not present an

17  available claim or that he chose to pursue other claims does not establish cause."

18  *Martinez-Villareal v. Lewis*, 80 F.3d 1301, 1306 (9th Cir. 1996).

19

20  _____

[5] RCW 10.73.090(1) bars a defendant from filing a personal restraint petition or other collateral
21  challenge to a judgment and sentence in a criminal case more than one year after the judgment and
    sentence become final.  Petitioner's judgment and sentence became final under state law on June 16,
22  2021, Dkt. 30-1 at 159, the date the court of appeals issued its mandate terminating direct review of
    Petitioner's appeal, *see* RCW 10.73.090(3)(b).  It therefore seems clear that Petitioner would now be time
23  barred from returning to the state courts to present his unexhausted claims, and that he has procedurally
    defaulted on those claims for the purposes of federal habeas review, *Coleman*, 501 U.S. at 735 n.1.  Thus,
    federal review of his first and fourth claims is barred absent a showing of cause and prejudice or actual
    innocence.

1    To show "prejudice," a petitioner "must shoulder the burden of showing, not merely that

2    the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and

3    substantial disadvantage, infecting his entire trial with error of constitutional dimensions."

4    *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphases in original).  Only in an

5    "extraordinary case" may the habeas court grant the writ without a showing of "cause" or

6    "prejudice" to correct a "fundamental miscarriage of justice" where a constitutional violation has

7    resulted in the conviction of a defendant who is actually innocent.  *Murray*, 477 U.S. at 496.

8    Here, Petitioner defaulted on his first and fourth claims by not fairly presenting them to

9    the Washington courts as federal constitutional claims on direct appeal or in his personal restraint

10    petition proceedings.  Petitioner fails to demonstrate that any factor external to the defense is to

11    blame for this failure and, thus, has not demonstrated cause for his procedural default.  Because

12    Petitioner has not met his burden of demonstrating cause for his procedural default, the Court

13    need not determine whether there was any actual prejudice.  *See Cavanaugh v. Kincheloe*, 877

14    F.2d 1443, 1448 (9th Cir. 1989) (citing *Smith v. Murray*, 477 U.S. 527, 533 (1986)).  In addition,

15    Petitioner makes no colorable showing of actual innocence.  Petitioner therefore fails to

16    demonstrate that his procedurally defaulted claims are eligible for federal habeas review.

17    Petitioner's first and fourth claims should be dismissed.

18    B.    <u>Section 2254 Merits Review</u>

19    The Court now turns to the merits of Petitioner's exhausted claims, which allege

20    Petitioner's constitutional rights were violated when (1) the trial court excluded evidence of the

21

22

23

family members' relative immigration statuses, and (2) the state failed to prove that Petitioner did not act in self-defense.[6]  Dkt. 28 at 7–10.

        1.     *Federal Habeas Standard, 28 U.S.C. § 2254*

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a habeas corpus petition may be granted with respect to any claim adjudicated on the merits in state court only if (1) the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court; or (2) the decision was based on an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d).  In considering claims pursuant to § 2254(d), the Court is limited to the record before the state court that adjudicated the claim on the merits, and the petitioner carries the burden of proof.  *Cullen v. Pinholster*, 563 U.S. 170, 181–82 (2011).

Under § 2254(d)(1)'s "contrary to" clause, a federal court may grant the habeas petition only if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.  *See Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). Under the "unreasonable application" clause, a federal habeas court may grant the writ only if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.  *See id.* at 407–09.

---

[6] Petitioner's third claim states that the "state courts exculpated the evidence of Yu mentioned sex to me on several occasions.  Yu tried adultery to me but never got which can prove the reason Yu focused on my genitals."  Dkt. 28 at 8.  Given the facts Petitioner cites in support of this claim and the substance of the claims Petitioner raised in the state courts, the Court construes this as a challenge to the sufficiency of the state's evidence disproving self-defense.

1    The Supreme Court has made clear that a state court's decision may be overturned only if

2    the application is "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75–76 (2003).

3    The Supreme Court has further explained that "[a] state court's determination that a claim lacks

4    merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the

5    correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011)

6    (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

7        Clearly established federal law, for purposes of AEDPA, means "the governing legal

8    principle or principles set forth by the Supreme Court at the time the state court render[ed] its

9    decision." *Lockyer*, 538 U.S. at 71–72.  This includes the Supreme Court's holdings, not its

10   dicta.  *Id.* at 71.  "If no Supreme Court precedent creates clearly established federal law relating

11   to the legal issue the habeas petitioner raised in state court, the state court's decision cannot be

12   contrary to or an unreasonable application of clearly established federal law." *Brewer v. Hall*,

13   378 F.3d 952, 955 (9th Cir. 2004) (citing *Dows v. Wood*, 211 F.3d 480, 485–86 (9th Cir. 2000)).

14       Under § 2254(d)(2), a petitioner may only obtain relief by showing that the state court's

15   conclusion was based on "an unreasonable determination of the facts in light of the evidence

16   presented in the [s]tate court proceeding."  "To show such an error occurred, the petitioner must

17   establish that the state court's decision rested on a finding of fact that is '*objectively*

18   *unreasonable.*'" *Hibbler v. Benedetti*, 693 F.3d 1140, 1146 (9th Cir. 2012) (quoting *Lambert v.*

19   *Blodgett*, 393 F.3d 943, 972 (9th Cir. 2004)) (emphasis in original).  "Factual findings are

20   objectively unreasonable if they are unsupported by sufficient evidence in the state court record."

21   *Tong Xiong v. Felker*, 681 F.3d 1067, 1074 (9th Cir. 2012).  In addition, the Court presumes the

22   state court's factual findings to be sound unless the petitioner rebuts "the presumption of

23   correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

1               2.      *Claim 2*

2         Petitioner's second claim contends the state court violated his constitutional right to

3   present a defense by improperly excluding evidence of the family members' relative immigration

4   statuses.  Dkt. 28 at 7.

5         The Supreme Court has clearly established the constitutional right of an accused to

6   present a defense.  *See, e.g.*, *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973); *Pointer v.*

7   *Texas*, 380 U.S. 400, 404 (1965).  This right, however, is not absolute, and not every evidentiary

8   ruling to exclude defense evidence infringes upon it.  *Montana v. Egelhoff*, 518 U.S. 37, 42

9   (1996) (" . . . the proposition that the Due Process Clause guarantees the right to introduce all

10  relevant evidence is simply indefensible."); *Rock v. Arkansas*, 483 U.S. 44, 55 (1987) ("Of

11  course, the right to present relevant testimony is not without limitation.  The right may, in

12  appropriate cases, bow to accommodate other legitimate interests in the criminal trial process.)

13  (internal quotation marks and citation omitted).

14        "'[S]tate and federal rulemakers have broad latitude under the Constitution to establish

15  rules excluding evidence from criminal trials.'"  *Holmes v. South Carolina*, 547 U.S. 319, 324

16  (2006) (quoting *United States v. Scheffer*, 523 U.S. 303, 308 (1998)).  While the Constitution

17  "prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that

18  are disproportionate to the ends that they are asserted to promote, well-established rules of

19  evidence permit trial judges to exclude evidence if its probative value is outweighed by certain

20  factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury."  *Id*. at

21  326.  The Supreme Court has held that a judge may exclude evidence that is "'repetitive . . . ,

22  only marginally relevant' or poses an undue risk of 'harassment, prejudice, [or] confusion of the

23  issues.'"  *Id*. at 326–27 (citation omitted).  A judge may likewise exclude evidence that is

1   unreliable, misleading, or unfairly prejudicial without running afoul of the Constitution.

2   *Egelhoff*, 518 U.S. at 41–42.  "Only rarely" has the Supreme Court "held that the right to present

3   a complete defense was violated by the exclusion of defense evidence under a state rule of

4   evidence."  *Nevada v. Jackson*, 569 U.S. 505, 509 (2013).

5          Here, the trial court excluded evidence of the family members' immigration statuses

6   under Washington Rule of Evidence 401, finding that such evidence was not relevant, and that

7   even if it were, its prejudicial effect outweighed its probative value.  Dkt. 30-1 at 568–69.  The

8   Washington Court of Appeals reasonably determined that this finding did not deprive Petitioner

9   of his constitutional right to present a defense.  The court held:

10         Next, Wang asserts that the trial court's decision to exclude evidence of his
       own and family members' respective immigration statuses infringed upon his right

11     to present a defense.  We disagree.

12         Our Supreme Court has explained that a contention that an evidentiary
       ruling violated a defendant's constitutional right to present a defense is reviewed

13     pursuant to a two-step process.  State v. Arndt, 194 Wn.2d 784, 797-98, 453 P.3d
       696 (2019).  First, we review the challenged evidentiary rulings under an abuse of

14     discretion standard.  Then, if necessary, we review de novo whether such rulings
       violate a defendant's constitutional right to present a defense.  See Arndt, 194

15     Wn.2d at 797-812.

16         Here, Wang does not contend that the trial court's ruling regarding
       immigration status violated the applicable rule of evidence. [footnote omitted]

17     Hence, we proceed directly to considering whether it violated his right to present a
       defense.

18
           "The right of an accused in a criminal trial to due process is, in essence, the

19     right to a fair opportunity to defend against the State's accusations."  Chambers v.
       Mississippi, 410 U.S. 284, 294, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973).  "A

20     defendant's right to an opportunity to be heard in his defense, including the rights
       to examine witnesses against him and to offer testimony, is basic in our system of

21     jurisprudence."  State v. Jones, 168 Wn.2d 713, 720, 230 P.3d 576 (2010) (citing
       Chambers, 410 U.S. at 294).  However, defendants have "no constitutional right to

22     present *irrelevant* evidence."  Jones, 168 Wn.2d at 720.

23         When determining whether the right to present a defense has been violated,
       "the State's interest in excluding evidence must be balanced against the defendant's

need for the information sought to be admitted." <u>Arndt</u>, 194 Wn.2d at 812.  It would violate a defendant's right to present a defense to bar the admission of evidence that, "if excluded, would deprive defendants of the ability to testify to their versions of the incident."  <u>Jones</u>, 168 Wn.2d at 721.  However, a trial court may bar the admission of evidence that, if excluded, would not completely bar a defendant from offering relevant evidence that would enable the defendant to present the defense theory of the case to the jury.  <u>See Arndt</u>, 194 Wn.2d at 814 (concluding that Arndt's right to present a defense was not violated in a murder and arson case when only some of her proffered evidence was excluded and she was able to argue her defense theory).

Here, Wang contends that evidence of the family's immigration status was necessary to his self-defense claim because it explained the family's power dynamics in order to "counter" the State's narrative that he was an abusive husband. Specifically, he asserts that because, of the family members, only Zhen was a United States citizen, she had power over both her parents and him.

However, the record establishes that Wang was permitted to, and did, in fact, argue his theory to the jury that he acted reasonably in self-defense. [court's footnote. In his next claim of error, Wang contends on appeal that the record "establishes" that Wang acted reasonably in self-defense.  This argument would be impossible had Wang not had the opportunity to present evidence of his theory.] Immigration status evidence was not necessary for Wang to testify that his mother-in-law grabbed and squeezed his genitals and that he was afraid he would suffer serious harm.

Because Wang was allowed to proffer sufficient evidence to argue his defense theory to the jury, and did, in fact, argue his theory to the jury, his right to present a defense was not violated.  <u>See Arndt</u>, 194 Wn.2d at 813-14 (concluding that there was no violation of Arndt's right to present a defense because Arndt was able to advance her defense theory through the presentation of some, though not all, of her proposed supporting evidence).

Dkt. 30-1 at 18–21.

While Petitioner argues the evidence of immigration status was "highly relevant" because it helped paint the "whole big picture" about his case to the jury, and that excluding it "absolutely violated" his right to present a defense, Dkt. 31 at 5, he provides no argument or authority to support this conclusion.  Nor does Petitioner demonstrate that the evidence rule used to exclude the evidence is itself unconstitutional.  Petitioner therefore fails to demonstrate that the state courts' exclusion of the evidence violated clearly established federal law, or that it was

REPORT AND RECOMMENDATION - 19

based on an unreasonable determination of the facts.  Petitioner's second claim should be dismissed.

        3.    *Claim 3*

In his third claim, Petitioner contends the prosecution failed to prove the absence of self-defense, thereby violating his constitutional rights.  Dkt. 28 at 8–10.

As an initial matter, it is not clear to the Court that Petitioner has demonstrated this claim rests upon clearly established federal law, as required to demonstrate entitlement to habeas relief. Although Petitioner alleges the state did not prove the absence of self-defense, Supreme Court decisions do not establish that the state bears this burden under the Constitution, as opposed to under state law.  Instead, the Supreme Court has recognized that while the state "must prove guilt beyond a reasonable doubt with respect to every element of the offense charged, . . . they may place on defendants the burden of proving affirmative defenses[,]" *Gilmore v. Taylor*, 508 U.S. 333, 341 (1993), such as self-defense.  *See also Martin v. Ohio*, 480 U.S. 228, 235–36 (1987); *Patterson v. New York*, 432 U.S. 197, 210 (1977).  Thus, whether the state or the defense bears the burden of proof on a claim of self-defense is a question of state law.  Although Washington places the burden on the state to disprove self-defense, *State v. Grott*, 195 Wn.2d 256, 266, 458 P.3d 750 (2020), the alleged failure to carry this burden would arguably constitute an error of state law, and therefore would not state a cognizable claim in habeas, *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) ("federal habeas corpus relief does not lie for errors of state law.") (citation omitted).

But even if the claim does state a claim in habeas, the state court reasonably rejected it. A petitioner "is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable

1   doubt." *Jackson v. Virginia*, 443 U.S. 307, 324 (1979).  The habeas court's review of the record

2   for sufficiency of the evidence is "sharply limited," and the Court owes great deference to the

3   trier of fact.  *Wright v. West*, 505 U.S. 277, 296 (1992).  The Court must view all of the evidence

4   in the light most favorable to the prosecution.  *Jackson*, 443 U.S. at 319.  "[T]he prosecution

5   need not affirmatively 'rule out every hypothesis except that of guilt . . . .'"  *West*, 505 U.S. at

6   296 (quoting *Jackson*, 443 U.S. at 326).  Rather, "a reviewing court 'faced with a record of

7   historical facts that supports conflicting inferences must presume–even if it does not

8   affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the

9   prosecution, and must defer to that resolution.'"  *Id*. at 296–97 (quoting *Jackson*, 443 U.S. at

10  326).

11          Moreover, habeas claims challenging the sufficiency of evidence "face a high bar in

12  federal habeas proceedings because they are subject to two layers of judicial deference."

13  *Coleman v. Johnson*, 566 U.S. 650, 651 (2012).  First, on direct appeal, "'it is the responsibility

14  of the jury—not the court—to decide what conclusions should be drawn from evidence admitted

15  at trial.  A reviewing court may set aside the jury's verdict on the ground of insufficient evidence

16  only if no rational trier of fact could have agreed with the jury.'"  *Id.* (quoting *Cavazos v. Smith*,

17  565 U.S. 1, 2 (2011) (per curiam)).  And second, on habeas review, a federal court may only

18  overturn a state court decision rejecting a sufficiency of the evidence challenge "if the state court

19  decision was objectively unreasonable."  *Id.* (quoting *Cavazos*, 565 U.S. at 2) (internal quotation

20  marks and citation omitted).

21          Here, the Washington Court of Appeals reasonably determined that the prosecution

22  sufficiently proved that Petitioner did not act in self-defense.  The court held:

23              Due process requires that the State prove every element of a crime beyond
            a reasonable doubt.  <u>State v. Johnson</u>, 188 Wn.2d 742, 750, 399 P.3d 507 (2017).

To determine whether sufficient evidence supports a conviction, an appellate court must "view the evidence in the light most favorable to the prosecution and determine whether any rational fact finder could have found the elements of the crime beyond a reasonable doubt." State v. Homan, 181 Wn.2d 102, 105, 330 P.3d 182 (2014). A claim of insufficient evidence admits the truth of the State's evidence and all reasonable inferences from that evidence. State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). All reasonable inferences must be interpreted in favor of the State and most strongly against the defendant. Salinas, 119 Wn.2d at 201. Additionally, an appellate court "must defer to the trier of fact for purposes of resolving conflicting testimony and evaluating the persuasiveness of the evidence." Homan, 181 Wn.2d at 106.

To prove first degree assault as charged, the State was required to establish that Wang assaulted Yu with the intent to inflict great bodily harm and that the assault resulted in great bodily harm. Former RCW 9A.36.011(1)(c) (1997). [footnote omitted] Wang raised a self-defense claim, shifting the burden to the State to prove the absence of self-defense beyond a reasonable doubt. State v. Walden, 131 Wn.2d 469, 473, 932 P.2d 1237 (1997).

"Evidence of self-defense is evaluated 'from the standpoint of the reasonably prudent person, knowing all the defendant knows and seeing all the defendant sees.'" Walden, 131 Wn.2d at 474 (quoting State v. Janes, 121 Wn.2d 220, 238, 850 P.2d 495 (1993)). Reasonable force in self-defense is justified when there is an appearance of imminent danger. State v. Bradley, 141 Wn.2d 731, 737, 10 P.3d 358 (2000). The degree of force used is limited to what a reasonably prudent person would find necessary under the conditions as they appeared to the defendant. Walden, 131 Wn.2d at 474.

Wang argues that the State failed to provide sufficient evidence to refute his claim of self-defense and thus to prove that he intended to cause great bodily harm. A successful claim of self-defense negates criminal intent. State v. Brown, 94 Wn. App. 327, 343 n.4, 972 P.2d 112 (1999) (because a person acting in self-defense is acting lawfully, proof of self-defense negates the element of intent), aff'd, 140 Wn.2d 456, 998 P.2d 321 (2000).

Therefore, the State was required to disprove the self-defense claim beyond a reasonable doubt in order to prove that Wang assaulted Yu with intent to cause great bodily harm. See State v. Grott, 195 Wn.2d 256, 266, 458 P.3d 750 (2020); accord State v. Acosta, 101 Wn.2d 612, 616, 683 P.2d 1069 (1984).

To refute the claim of self-defense, the State produced evidence of the extent of the force that Wang used. The jury saw photographs of blood splatter and broken objects in the home and heard testimony about the extent of Yu's injuries—including life-threatening head injuries. The jury was therefore free to conclude that even if Yu was the aggressor, the minor injuries suffered by Wang did not justify the force that he used. Further, the jury was entitled to disbelieve Wang's

testimony.  We defer to the trier of fact on issues of credibility of witnesses and persuasiveness of the evidence.  State v. Thomas, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004).

Because a rational finder of fact could conclude that Wang did not act in self-defense but, rather, intended to cause Yu great bodily harm, sufficient evidence supports the conviction.

Dkt. 30-1 at 21–23.

Petitioner contends he "absolutely felt imminent danger" and that he was "reasonably acting [in] self-defense[,]" Dkt. 31 at 6–7, but under the doubly deferential standards of 28 U.S.C. § 2254(d), he has failed to show that the state court's adjudication was objectively unreasonable.  Consequently, Petitioner is not entitled to federal habeas relief on his third claim.[7]

C.    Evidentiary Hearing

Because Petitioner's claims can be resolved by reference to the state court record, an evidentiary hearing is not necessary.  See Totten v. Merkle, 137 F.3d 1172, 1176 (9th Cir. 1998) ("[A]n evidentiary hearing is not required on issues that can be resolved by reference to the state court record.").

V.    CERTIFICATE OF APPEALABILITY

A petitioner seeking post-conviction relief under § 2254 may appeal a district court's dismissal of his federal habeas petition only after obtaining a certificate of appealability from a

---

[7] It is unclear whether Petitioner also intends to raise an ineffective assistance of trial counsel claim in this Court.  See Dkt. 28 at 11.  Assuming he does, Petitioner properly exhausted this claim by raising it in the personal restraint proceedings in state court. Dkt. 30-1 at 166, 189–90.  However, Petitioner fails to demonstrate that he is entitled to relief on this claim.  Claims of ineffective assistance of counsel are evaluated under the two-prong test set forth in Strickland v. Washington, 466 U.S. 668 (1984). Under Strickland, a petitioner must prove (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense.  Strickland, 466 U.S. at 687.  Petitioner contends that his trial counsel told him one hour before trial that "Yu might die anytime[,]" that counsel wanted him to take a plea deal, and that Petitioner tried to fire counsel seven times.  Dkt. 28 at 11.  None of these assertions establish that counsel's performance was deficient, or that it prejudiced Petitioner.  Thus, to the extent Petitioner intends to raise an ineffective assistance of counsel claim here, that claim should be dismissed.

district or circuit judge. A certificate of appealability may issue only where a petitioner has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(3). A petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Under this standard, the Court concludes that Petitioner is not entitled to a certificate of appealability with respect to any of the claims asserted in his amended petition.

## VI.    CONCLUSION

The Court recommends Petitioner's amended petition, Dkt. 28, be DENIED without an evidentiary hearing and this action be DISMISSED with prejudice. The Court further recommends that a certificate of appealability be DENIED with respect to all claims asserted in this federal habeas action. A proposed order accompanies this Report and Recommendation.

## VII.    OBJECTIONS

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **twenty-one (21) days** of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14)** days after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **August 11, 2023**.

Dated this 18th day of July, 2023.

S. KATE VAUGHAN
United States Magistrate Judge